# Walker *v.* Radford.

*Bill in Equity by Mortgagee to Prevent Removal of the Mortgaged Property out of the State.*

1. *Removal of mortgaged chattels out of the State; equity will prevent.*—A court of equity will interfere, before the law day of the mortgage, and before the mortgagee has a right to proceed at law, and restrain the removal of the mortgaged property beyond the jurisdiction of the court.

2. *Seizure, writ of; allowed under statute to prevent removal of mortgaged property.*—When a case for equitable interference is shown, the statute (Code, §§ 3857-3863) authorizes a writ of seizure to prevent the removal of mortgaged property beyond the State, instead of an injunction, which would be the appropriate remedy in the absence of the statute.

3. *Removal of mortgaged property out of the State; ground of equity to prevent.* The ground of equitable interference, in such cases, is the prevention of injury to the present or future rights of the mortgage, and the injury must be shown, and it must appear that the mortgagor, or those claiming under him, have done, or are about to do, some act which violates the mortgagee's rights and beyond the rights of the mortgagor, and for which the law does not give an adequate and appropriate remedy.

4. *Same; temporary removal of property no ground for equitable interference.* But the mortgagor is not to be hindered in the legitimate use of the property, and a mere temporary removal of the property out of the State, accompanied by an honest intention to return it before the law day of the mortgage, and without any intention to affect, embarrass, or impair the rights of the mortgagee, will not authorize a court of equity to interfere by injunction, or the statutory writ of seizure, to prevent the removal of the property.

This was a bill in equity, filed on April 5th, 1877, by Ida H. Walker, against Mary E. Radford, and alleged that the complainant was a married woman, and the wife of R. H. Walker, who carried on business for her as her agent in Columbia, Henry county ; that on February 10th, 1877, her husband took a mortgage for over $100 from John T. Radford and E. F. Griffin, to secure whatever account said Radford should make in her store for supplies for the year 1877, and executed a promissory note to complainant, or her agent, for $150, payable October 1, 1877, the said note being for an amount which it was supposed would cover the amount of supplies said Radford would need in making a crop for 1877. The property included in the mortgage was two horses and a wagon, and some cattle, and October 1, 1877, was the law

day of the mortgage. Radford bought supplies to the amount of $78. About March 9, 1877, he was killed, leaving his widow, the appellee, in the possession of the property. The bill then averred that Mary E. Radford was about to leave the State of Alabama, and intended to take the mortgaged property with her; that the mortgage debt was a part of the *corpus* of her statutory separate estate; that J. T. Radford left but little other property; that if the mortgaged property was taken out of the State, complainant would lose her debt. The bill prayed for a writ of seizure, to be levied by the sheriff, on the mortgaged property. The answer of Mary E. Radford admitted the facts set out in the bill, except that said Radford's account amounted to $78.96, but denied that she intended to remove any of the property out of the State of Alabama permanently, or to remove the cattle at all. She admitted that she was preparing, after the decease of her husband to visit her mother, who resided in Georgia, and that she intended going in the wagon, and with the horses mortgaged to appellant, but denied that she intended to keep them in Georgia; that she owned part of the land which was being cultivated by her husband; that arrangements had been made with one Seaborn Shinbolster to complete the crop commenced by her husband, and that said horses and wagon were to be used in making said crop. The answer also denied that the complainant was in danger of losing her debt, or the property in danger of being wasted, and defendant also claimed the mortgaged property.

The register issued the writ of seizure, and it was levied upon the mortgaged property, which was replevied by the appellee. Numerous witnesses were examined, and the only positive testimony that defendant was about to leave the State and take the mortgage property with her, was that of complainant's husband, who testified that defendant told him she was going to leave the State and take the property with her, but there was no testimony that defendant was going to take the property permanently out of the State, and she testified that she intended to return with it. The Chancellor quashed the writ of seizure, and dismissed the bill. His decree is assigned as error.

J. WYATT OATES, for appellant.

J. I. COWAN, for appellee.

BRICKELL, C. J.—The bill is filed by the appellant, a mortgagee of personal property, before the maturity of the mortgage debt, and while the mortgagor was entitled to pos-

session to prevent the removal of the property beyond the State. A court of equity has jurisdiction to restrain the mortgagor of lands, in possession, from committing waste, if thereby the security for the mortgage debt is rendered inadequate. Upon the same principles, the court will interfere to restrain injuries to, or the removal beyond, the jurisdiction of the court of chattels subject to mortgage; and the court will interfere before the law day of the mortgage, and before the mortgagee has a right to proceed at law.—High on Inj. § 447. The statute (Code of 1876, §§ 3857-63), when a case for equitable interference is shown, would authorize the issue of a.writ for the seizure of the property, if the mode of procedure it prescribes is observed, instead of an injunction which would be the appropriate remedy in the absence of the statute.     •

The ground of interference is the prevention of injury to the future or present rights of the mortgagee, for which the law does not furnish an appropriate and adequate remedy. The injury must be shown, and it must be shown that the mortgagor, or those claiming under him, are about doing, or have done, some act which is violative of the rights of the mortgagee, and beyond his right as mortgagor in and entitled to possession. If it is conceded to the appellant, that a removal of the personal property beyond the jurisdiction of the court was apprehended, and was intended and about being made, it was a mere temporary removal, not intended to be continued until the maturity of the debt, and the law day of the mortgage. Nor does it appear there was any increased probability of deterioration in value because of the mere temporary removal, or that in consequence, the rights of the mortgagee were placed in serious jeopardy. It is the jeopardy of the rights of the mortgagee by the removal of the property beyond the reach of his legal remedies when he is entitled to resort to them, that forms a ground of equitable interference. As it is in cases at law, a ground for an attachment at the suit of a creditor, that his debtor is removing his property beyond the State, without the jurisdiction of its courts, depriving him of the legal remedies he may here pursue. But it is not intended that the mortgagor, or the debtor, shall be hindered and denied the legitimate use of the property, in subservience of his convenience or pleasure. A mere temporary removal of the property, for use and convenience, not intended to affect the rights of the mortgagee, or to embarrass, or to impair them, accompanied by an honest intention to return it to the State, before the legal rights .of the mortgagee will attach, will not justify a court of equity in intervening by injunction, or by the issue of the statutory

writ of seizure. The removal must place his rights in jeop-
ardy, and it must be inconsistent with a legitimate use of the
property by the mortgagor. The removal intended, was of
horses and a wagon, by the widow of the mortgagor, in
making a brief visit to her mother in Georgia, with a mani-
fest intention of returning before the law day of the mort-
gage, and afforded of itself no ground for a reasonable appre-
hension, on the part of the mortgagee, that the property
would not be forthcoming when his legal rights should attach.
For this reason, without regard to any other question which
is supposed to be involved, there is no error in the decree of
the Chancellor.

    Affirmed.